# Third District Court of Appeal
## State of Florida

Opinion filed April 9, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1904
Lower Tribunal No. 20-16439
_____

**Jeremy Koss, et al.,**
Appellants,

vs.

**Florida Insurance Guaranty Association**, etc.,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Reemberto Diaz, Judge.

Rodriguez Tramont & Núñez, P.A., and Paulino A. Núñez, Jr., and Frank R. Rodriguez and Stephanie Therese Núñez; Crabtree & Auslander, LLC and Charles M. Auslander and John G. Crabtree and Brian Tackenberg; Knecht Law Group and Michael C. Knecht (Jupiter), for appellants.

Quintairos, Prieto, Wood & Boyer, P.A., and Dorothy Venable DiFiore, for appellee.

Before FERNANDEZ, GORDO and LOBREE, JJ.

LOBREE, J.

Jeremy and Laura Koss (the "Kosses") appeal a final summary judgment entered in favor of Saint Johns Insurance Company, Inc. ("St. Johns").[1] As the trial court properly concluded that the water damage suffered by the Kosses was excluded by the insurance policy and only covered by the Limited Water Damage Coverage Endorsement, we affirm.

## BACKGROUND

On February 21, 2020, Jeremy Koss called St. Johns to report a claim for a loss to their property that occurred after they suffered water damage in their home from a sewer line backup that his wife witnessed. After investigating the claim, St. Johns paid the Kosses $10,000 for the damages caused by the discharge of water from the cast iron plumbing system, finding the water damages were excluded under the policy, and its liability was limited to $10,000. The policy's initial terms provided as follows:

> **PERILS INSURED AGAINST**
> **COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES.**
> We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property; however, we do not insure loss:
> . . .
> 2. caused by:
> . . .
> h. (1) wear and tear, marring, deterioration;

---

[1] Florida Insurance Guaranty Association was substituted as appellee during the pendency of this appeal, after St. Johns became insolvent.

2

. . .

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

The policy also contained general exclusions, which included a section titled Water Damage, which was modified by a Special Provisions-Florida Endorsement. Including the modification, the general exclusions to the policy read as follows:

2. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

. . .

c. Water Damage, meaning:

. . .

(2) Water, water-borne material, sewage or any other substance which backs up through sewers or drains; [or]

. . .

(4) Water, water-borne material, sewage or any other substance on or below the surface of the ground, regardless of its source.

This includes water or any other substance which exerts pressure on or flows, seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

3

> Caused by or resulting from human or animal forces or any act of nature.

For an additional premium, the Kosses purchased a Limited Water Damage Coverage Endorsement, which states:

> Your policy is endorsed to provide the following for an additional premium:
> We cover:
> Sudden and accidental direct physical loss to covered property by:
> 1. Discharge; or
> 2. Overflow; of
> a. Water; or
> b. Steam; from:
> (1) Within a plumbing;
> (2) Heating;
> (3) Air conditioning; or
> (4) Automatic fire protective sprinkler system; or
> (5) From within a household appliance.
> **LIMIT OF LIABILITY**
> The limit of liability for all covered property provided by this endorsement is:
>      $10,000 per occurrence.
> This coverage does not increase the limit of liability that applies to the damaged covered property.
> All other provisions of your policy apply.

On August 3, 2020, the Kosses filed suit asserting St. Johns breached the insurance policy by failing to pay for all covered losses. The matter proceeded and the parties ultimately filed competing amended motions for summary judgment. In its motion, St. Johns asserted there was no breach of contract as the plain language of the policy excluded any direct or indirect coverage for damage caused by "[w]ater, water-borne material, sewage or

4

any other substance or on or below the surface of the ground, regardless of its source" and the Limited Water Damage Endorsement only extended $10,000 of coverage for such damage.

The Kosses responded and filed their own motion for partial summary judgment asserting that the policy expressly provided coverage for water damage from a plumbing system, which included any repair costs such as tearing out parts of the property necessary to conduct the repairs and any loss of use of their home. The Kosses further argued the policy exclusion pointed to by St. Johns did not apply because that exclusion applied only to water from a sewer system not an internal plumbing system like the one in their home, which had a septic tank. St. Johns replied by reasserting its prior argument and also emphasizing that the loss was reported as a sewer backup and the policy exclusion included losses caused directly or indirectly by water damage meaning "[w]ater, water-borne material, sewage or any other substance which backs up through sewers or drains".

On July 15, 2021, the trial court held a hearing on the competing motions. Four days later, the trial court entered an unelaborated order granting St. Johns' motion for final summary judgment and denied the Kosses' motion. The Kosses appealed. Following an order relinquishing jurisdiction from this court, the trial court entered an amended order granting

5

St. Johns' motion for summary judgment. In the amended order the trial court found: (1) a plain reading of the policy showed that it was undisputed "that a sewer backup[2] is the cause of loss in this case;" (2) the insurance policy excluded all coverage for direct or indirect damage—including tear-out costs—from water, water-borne material, sewage, or any other substance on or below the surface of the ground, regardless of its source; and (3) the Limited Water Damage Endorsement only returned $10,000 of coverage for direct damages which did not include indirect damages, such as the ones being sought by the Kosses.

**ANALYSIS**

This court reviews an order granting final summary judgment de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). "Insurance policy construction is a question of law subject to de novo review." Arguelles v. Citizens Prop. Ins. Corp., 278 So. 3d 108, 111 (Fla. 3d DCA 2019) (quoting Gov't Emps. Ins. Co. v. Macedo, 228 So. 3d 1111, 1113 (Fla. 2017)). In addition, "a question of insurance policy

---

[2] While the trial court found it was "undisputed that a sewer backup is the cause of loss in this case[,]" both parties acknowledge the home had a septic tank and damages were caused by discharge of water from the cast iron plumbing backup.

6

interpretation, which is a question of law, [is also] subject to de novo review." Penzer v. Transp. Ins. Co., 29 So. 3d 1000, 1005 (Fla. 2010).

At issue is whether the Kosses' policy excluded damages caused by the discharge of sewage water from the cast iron plumbing system. Under Florida law, "an insurance policy must be enforced in accordance with its unambiguous terms." Fireman's Fund Ins. Co. v. Levine & Partners, P.A., 848 So. 2d 1186, 1187 (Fla. 3d DCA 2003); see also E. Fla. Hauling, Inc. v. Lexington Ins. Co., 913 So. 2d 673, 676 (Fla. 3d DCA 2005) ("When the language of an insurance policy is clear and unambiguous, a court must interpret it according to its plain meaning, giving effect to the policy as it was written.").

Based on the Special Provisions-Florida Endorsement, the policy specifically excludes water damage that results from "[w]ater, water-borne material, sewage or any other substance which backs up through sewers or drains" and "[w]ater, water-borne material, sewage or any other substance on or below the surface of the ground, regardless of its source" which includes water that "exerts pressure on or flows, seeps or leaks through a building." The Kosses assert that this policy exclusion does not apply to the damage they suffered from their plumbing system because this court has previously concluded in Cheetham v. Southern Oak Insurance Co., 114 So.

7

3d 257, 263 (Fla. 3d DCA 2013), that a similar policy limited the water damage exclusion to water from external sources.

However, the policy language in <u>Cheetham</u> is distinguishable. In <u>Cheetham</u> the water exclusion stated:

> **SECTION I—EXCLUSIONS**
> **A.** We do not insure for loss caused directly or indirectly by any of the following . . .
> . . . .
> **3. Water Damage**
> Water Damage means:
> **a.** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
> **b.** Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or
> **c.** Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;
> caused by or resulting from human or animal forces or any act of nature.

<u>Id.</u> at 260. The court concluded that the insureds' damages resulting from the deterioration of the plumbing system were covered because "the exclusions from coverage contemplated by paragraphs a., b., and c. of the water damage exclusion relate to damage caused by water originating from somewhere other than the residence premises' plumbing system." <u>Id.</u> at 263.

8

Here, while the policy's language is similar to that in <u>Cheetham</u>, the policy terms regarding water damage exclusions are much broader and not limited to water originating from somewhere other than the residence. Specifically, the policy excludes water damage that results from "[w]ater, water-borne material, sewage or any other substance on or below the surface of the ground, regardless of its source" which includes water that "exerts pressure on or flows, seeps or leaks through a building." The plain language of this section therefore excludes damage caused by water that exists below the ground which seeps or leaks into a building "**regardless of its source**." Given that source of the water in the ground is irrelevant, this exclusion clearly includes water that seeps or leaks into a building from a plumbing system.

The Kosses contend that the phrase "regardless of the source" cannot transform the water released from the plumbing system into water in the ground because St. Johns is "responsible for clearly setting forth what damages are excluded from coverage under the terms of the policy." <u>Cheetham</u>, 114 So. 3d at 262. According to the Kosses, if St. Johns had intended to exclude coverage for water from the plumbing system it should have used express language specifying water escaping from the plumbing system was not covered to remove any ambiguity. See <u>Panettieri v. People's</u>

9

Tr. Ins. Co., 344 So. 3d 35, 38 (Fla. 4th DCA 2022) ("Ambiguous coverage provisions are construed strictly against the insurer that drafted the policy and liberally in favor of the insured." (quoting Liebel v. Nationwide Ins. Co. of Fla., 22 So. 3d 111, 115 (Fla. 4th DCA 2009))).

However, the "mere fact that a provision in an insurance policy could be more clearly drafted does not necessarily mean that the provision is otherwise inconsistent, uncertain or ambiguous." GeoVera Specialty Ins. Co. v. Glasser, 337 So. 3d 8, 13 (Fla. 4th DCA 2022) (quoting State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So. 2d 1245, 1248 (Fla. 1986)). The Kosses' policy clearly excludes water damages resulting from "water, water-borne material, sewage or any other substance which backs up through sewers or drains." Further, the policy excludes water below the ground that seeps or leaks into a building regardless of its source. This necessarily includes sewage water in the ground coming from a deteriorated plumbing system backup. The trial court thus properly entered judgment in St. Johns favor as the Kosses' water damages were excluded.

Finally, the Kosses argue that even if the policy excludes their water damages, the Limited Water Damage Coverage Endorsement only applies to water damage that results from "direct physical loss to covered property" and does not address the other secondary coverages for indirect loss listed

10

in their policy such as coverage for additional living expense, bacteria removal, debris removal, and ordinance or law, which provides them additional coverage for their tear-out costs. While we agree that the Limited Water Damage Coverage Endorsement does not address coverage for, or limit, these additional indirect costs, the Kosses' policy does not provide additional coverage for these tear-out costs, as in order for these additional coverages apply, the loss must be a result of a covered peril.

The policy's "Perils Insured Against" provision states it does not insure loss caused by deterioration but "[i]f any of these cause water damage not otherwise excluded, from a plumbing [system] . . . , we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance." A plain reading of this section indicates that tear-out coverage is included as part of water damage that is "not otherwise excluded."

Florida courts have found that "there is no additional coverage provision for tear out costs separate from water damage loss" where the Perils Insured Against provision defines tear-out coverage as included as part of the covered loss to property but excluded when the loss is excluded. People's Tr. Ins. Co. v. Banks, 388 So. 3d 862, 865 (Fla. 3d DCA 2023); see also Panettieri, 344 So. 3d at 39–40 (finding "no separate and distinct

11

coverage exists for tear out costs apart from water damage"); <u>Herrington v. Certain Underwriters at Lloyd's London</u>, 342 So. 3d 767, 770 (Fla. 4th DCA 2022) ("The policy language covers 'loss caused by the water *including the cost of tearing out*' parts of the structure to repair the system which leaked. 'Tear out' costs are thus part of the water damage loss. Therefore, the endorsement limiting all water damage loss includes tear out expenses."). Since, as discussed above, the Kosses' loss is excluded from coverage, these additional coverages do not apply. Accordingly, we conclude the trial court properly found that the Kosses' claim was limited to $10,000 from the Limited Water Damage Coverage Endorsement.

Affirmed.